UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                    Case Nos.:      3:09cr40/MCR/EMT
                                                       3:12cv477/MCR/EMT

DAVID ALLEN GIRARD

_____

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's Motion under § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody and supporting memorandum of law (docs. 73, 74).  The Government filed a response (doc. 80), and Defendant filed a reply (doc. 86).[1]  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that his § 2255 motion should be denied.  *See* Rules Governing Section 2255 Cases 8(a) and (b).

## PROCEDURAL BACKGROUND

Defendant was charged in a two-count indictment with using a computer to persuade, induce, entice, and coerce a minor to engage in sexual activity  ("Count One"); and traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with a minor ("Count Two") (doc. 11).  The Government filed a Notice of Enhancement Information identifying a prior conviction for possession of child pornography, which prior conviction would thus trigger the enhanced penalty

_____

[1] Exhibits 1, 3, 4, and 5, attached to Defendant's reply, were not considered by the court, in accordance with the court's order of July 12, 2013 (*see* doc. 94).  Defendant was afforded the opportunity to file an amended reply (*id.*), but Defendant has not done so.

provisions of 18 U.S.C. §§ 2422, 2423, 2426 (doc. 18).  Defendant's originally-appointed attorney Thomas Keith withdrew due to a scheduling conflict, and Eugene Polk, Esq., entered a notice of appearance on May 20, 2009 (docs. 20–23).

On June 17, 2009, Defendant entered a plea of guilty pursuant to a written plea agreement and factual summary (docs. 29, 30).  Briefly, in 2009 a police officer posed on the internet as a teenaged boy using the screen name "Caleb94infl."[2]  "Caleb's" profile indicated that he was fourteen years of age, had lived in foster homes most of his life, and was unhappy.  Shortly after entering an internet chat room, the officer, posing as Caleb, encountered Defendant Girard who was using the screen name "Onestep99."  For approximately an hour and forty-five minutes, Defendant Girard chatted with "Caleb94infl," discussing sexual activity and arranging to meet in person shortly thereafter at 2:00 a.m. at a Dairy Queen in Pensacola, Florida, to engage in sexual activity.  When Girard arrived at the Dairy Queen at the appointed time, he was arrested in possession of lubricating jelly and condoms.  Girard admitted to law enforcement that he was "Onestep99," that he had intended to meet a fourteen-year-old boy, and that he probably would have engaged in sexual relations with the boy.

During a subsequent search of Defendant's residence in Robertsdale, Alabama, officers discovered that Girard's computer was equipped with programs that would clean traces of online activity and encrypt data.  They did not find any pornography on the computer, but forensic analysis revealed that Girard had viewed "Caleb94infl's" internet profile shortly after the officer entered the chat room.

At the beginning of the plea colloquy, the court advised Defendant that if he had any questions and needed to speak to counsel to let the court know, and he would be given the opportunity to do so (doc. 54 at 4).  The court also told Defendant that it expected that he would speak up—that is, advise the court—if there was anything he was confused about, so the court could clarify it for him (*id.*).  Defendant heeded these words, as he requested permission to speak with counsel twice; he also asked the court for clarification of the word "subsequent" (doc. 54 at 8, 16–17).  At the close of the proceeding, at the Government's behest, the court inquired as to whether

---

[2] The facts are taken from the factual summary and the Eleventh Circuit's opinion on appeal (docs. 30, 67).

counsel had answered Defendant's questions during these brief conferences, and Defendant indicated that he had (*id*. at 31–32).

Defendant explained during the plea colloquy that he had been diagnosed with severe depression in September of 2008, and that he had been Baker Acted and spent two weeks in an inpatient facility (doc. 54 at 7–10). Following his release, he participated in outpatient therapy and was prescribed various medications (*id*. at 10–11). Defendant stated that by the time of the offense conduct, he had completed the outpatient program, but he was seeing a psychiatrist and a therapist and taking medication (*id*. at 11–12). Defendant first indicated that he did not receive his medications that day, but then he stated that he had taken them (*id*. at 12). He said that he was nervous, but felt "okay," and that he had no difficulty following what the court was saying or asking; he confirmed that he felt clear-headed enough to go forward with the proceedings (*id*. at 12–13).

In response to the court's questioning, Defendant acknowledged that he had fully discussed his plea and his decision to go forward with his attorney (doc. 54 at 13). The court explained Defendant's rights to him, and he acknowledged having previously discussed these rights with counsel (*id*. at 13–18). Defendant confirmed that he had discussed the plea agreement with counsel at the jail and had reviewed the documents himself (*id*. at 18–19). The court explained, and confirmed that Defendant understood, the penalties he faced (*id.* at 20–23). The court then explained the legal elements the Government could be required to prove, which Defendant also acknowledged that he understood (*id*. at 24–25). Defendant affirmed that he had read the factual summary in support of the guilty plea and that he had done what the Government said he had done (*id*. at 25). Based on this colloquy, the court found Defendant to be alert and intelligent, that he understood the nature of the charges and the consequences of entering a guilty plea, and that his decision to enter a plea was made of his own free will after consulting with competent counsel with whom he had indicated his satisfaction (*id*. at 29). The court stated "I make these findings based on your representations to the Court as well as my observations of you here in the courtroom, your demeanor and presentation" (*id.* at 29). Defendant then pleaded guilty to Counts One and Two of the indictment, in turn (*id*.).

Although not specifically stated on the record, pursuant to the standard plea agreement, the Government agreed not to recommend a specific sentence, but it reserved the right to present

evidence and make arguments as to the application of the guidelines and the 18 U.S.C. § 3553(a) factors (*see* doc. 29 at 3; doc. 67 at 5).

The Presentence Investigation Report ("PSR") was disclosed to the defense on August 17, 2009 (docs. 32, 47).  Defendant's base offense level was 28, and he received two, two-level upward adjustments for the use of a computer and because the offense conduct involved an unusually vulnerable victim, as well as a three-level downward adjustment for acceptance of responsibility, resulting in a total offense level of 29 (doc. 47, PSR ¶¶ 27–36).  Defendant had a single countable prior conviction for possession of child pornography, but because he was still on probation for that offense, he had four criminal history points and thus a criminal history category of III (PSR ¶¶ 39–43).

With respect to Defendant's background, the PSR noted that Defendant reportedly suffered a severe injury to his right foot in 2001 during a workplace accident, following which he was 100 percent disabled (PSR ¶53).[3]  In September 2008, Defendant attempted to take his own life with an opiate overdose due to depression over financial problems and chronic pain (PSR ¶¶ 56, 57).  Defendant's condition stabilized with the use of medication, which he was provided while at the jail (PSR ¶ 58.  Defendant admitted that he was addicted to prescription pain medication which he purchased from illegitimate sources when his prescriptions for Oxycodone and Lortab ran out.  He reported that his last use of Oxycodone was the night of his arrest.  He was not provided pain medication while housed at the Santa Rosa County jail (PSR ¶ 59).

The applicable guidelines range of 108 to 135 months became 120 to 135 months due to the ten-year minimum term of imprisonment pursuant to 18 U.S.C. § 2422(b) and 2426 (PSR ¶¶ 73–75).  The PSR noted that pursuant to U.S.S.G. § 3A1.1(b)(1), application note 4, if an enhancement from subsection (b) applies and Defendant's criminal history includes a prior sentence for an offense that involved the selection of a vulnerable victim, an upward departure may be warranted (PSR ¶ 92).

At sentencing, neither party offered any objection to the calculations contained within the PSR.  Defense counsel offered his client's testimony as a supplement to the information contained

---

[3] Defendant stated at the rearraignment that the accident occurred in 1999 (doc. 54 at 8), which is supported by medical records submitted in conjunction with the § 2255 motion indicating that the accident occurred on September 16, 1999 (doc. 74, App. T).

therein about Defendant's medical condition, not as a defense but to suggest that it might be considered in mitigation (doc. 55 at 3, 4– 9).  Defendant admitted under oath that he had entered a plea of guilty and that he was accepting full responsibility for what had happened (*id.* at 5).  Defendant explained that he had residual pain from a September 2001 workplace accident when a 2000-pound bucket fell on his foot.  Defendant stated that he took a "wide array of very powerful medications" and that he also had an electronic device implanted in his body to control the pain, although these measures were not entirely effective.  Defendant acknowledged his understanding that the fact that he took medication was not an excuse and did not "let [him] off the hook for what happened," but he also said that taking the medication had an impact on his judgment and ability to control impulses (*id.* at 7–8).  Defendant acknowledged what was stated in the PSR, that he had experienced problems with depression, and that he had been hospitalized because he became suicidal.  Defendant attributed the depression to his pain and his inability to work, and he noted that he spent most of his time at home or at his brother's house, as interacting with family and friends kept his mind off the fact that he was in constant pain.  On cross-examination, the Government re-confirmed the approximate date of Defendant's accident, but asked no further questions (*id.* at 9).

When offered the opportunity to allocute, Defendant stated:

I just would like to say that I'm sorry for what happened, and I apologize for taking up your time and the U.S. Attorney's time.

And I have problems medically, and there's things that I, you know, in the last six months haven't been able to take care of medically because of where I'm at.  And I have concerns about being able to take care of myself.  And I would just ask if there was any way at all to, you know, be put on probation or confined to my house or whatever so that — I'm afraid I'm going to lose my foot.  And if I'm not able to make the decision, then I don't know what I'm faced with.

(doc. 55 at 10).

The Government argued that any attempt by the defense to suggest that the offense conduct in this case was related to Defendant's 2001 accident was disingenuous, since Defendant's prior arrest for child exploitation offenses occurred in January of 2001.  It introduced into evidence the profile of the "victim" from the gay.com chat site, which clearly reflected that the individual with whom Defendant thought he was chatting was a fourteen-year-old boy who had been in foster care

his entire life.  It also introduced the transcript of the "chat" between Defendant and the victim, which, it argued, demonstrated that it was Defendant who both initiated contact and directed the conversation to sexual matters.  Finally, the Government introduced certified copies of Defendant's prior convictions for possession of child pornography and contributing to the delinquency of a minor.  The Government argued that in light of the particular circumstances of the case, an above-guidelines sentence would be appropriate (*id*. at 15–16).

After hearing defense counsel's argument in mitigation, the court stated that it found an upward departure was appropriate in this case, as well as a variance (doc. 55 at 18–21).  The court found appropriate a two-level upward departure, which resulted in a guidelines range of 135 to 168 months, and it also added an additional variance due to the particular circumstances of Defendant's case (*id*. at 19).  It noted Defendant's "modus operandi" of selecting vulnerable victims, as well as the fact that Defendant had a computer program designed to erase or destroy his hard drive, making it impossible for law enforcement to recover images such as those he had during the 2001 search. The district court addressed Defendant and stated "there's no question in this Court's mind that you are a serious sex offender, and you are a danger to the public and our children" and indicated that it had a hard time believing that there were no more acts committed between Defendant's prior conviction and the instant offense (*id*. at 21).[4]  The court sentenced Defendant to a term of 195 months, which was a departure and a variance from the originally-calculated guidelines range (*id*. at 23).

Defendant appealed his sentence to the Eleventh Circuit Court of Appeals, claiming that the plea agreement was breached and that his sentence was procedurally unreasonable (doc. 67).[5]  He

---

[4] The latter portion of this comment was the subject of Defendant's appeal.

[5] Appended to Defendant's § 2255 motion is a document addressed to the Eleventh Circuit captioned "Re: Issues to be Raised on Direct Appeal" (doc. 74, App. W).  Defendant describes the document, dated February 22, 2011, as his "motion to the appellate court" (*id*.).  He submitted it in conjunction with a request, that he later repeated, that the document be placed on the docket sheet in his direct appeal (*see* doc. 74, App. Y, Z).  In this document, Defendant makes myriad attacks on the proceedings against him.  For instance, Defendant contends that he was not competent to proceed at any point from the signing of the Miranda waiver through the acceptance of the plea and sentencing because he was under the influence of psychotropic medication.  He claims that his plea was unknowing, unintelligent, and involuntary because of the level of medication he was taking, and that he was coerced into signing a plea agreement admitting his guilt to a crime he did not commit.  Similarly, Defendant contends that his prior state convictions for possession of child pornography and contributing to the delinquency of a minor were "blatantly invalid" for the same reason—that he was

claimed that the Government breached the plea agreement when it argued at sentencing that circumstances supported an upward departure and an upward variance. The Eleventh Circuit found that the Government's argument was not tantamount to requesting a specific sentence or even suggesting the extent to which the court should impose either a departure or variance, and thus was not a breach of the plea agreement (*id*. at 13–15). The appellate court also rejected Defendant's argument that his sentence was procedurally unreasonable, finding that he had not shown plain error or prejudice as a result of the district court's "speculation" that he had engaged in other similar conduct between 2001 and the date of the instant offense in light of the data-destroying software on his computer (*id*. at 15–19).

Defendant's petition for writ of certiorari was denied on January 17, 2012, and his petition for a rehearing was denied on February 21, 2012 (doc. 74, app. O & Q).

In the present motion, Defendant contends that both trial and appellate counsel were constitutionally ineffective, and that his procedural and substantive due process rights were violated. The Government opposes the motion in its entirety.

## LEGAL ANALYSIS

<u>General Standard of Review</u>

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); <u>McKay v. United States</u>, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of

---

under the influence of both psychotropic and pain medications—and that state trial counsel was constitutionally ineffective for failing to bring Defendant's competency to the state court's attention. Attached to the document is an affidavit in which Defendant claims, among other things, that he did not commit the crimes as charged in his current conviction; that he was on the internet seeking drugs and went to Florida to illegally obtain Lortab and Oxycontin; that had he not been under the influence of medications, he would not have signed waivers, consented to searches, or pleaded guilty; and that counsel failed to investigate to find out why the data destruction program was on his computer (although he offers no insight as to what that reason might be) (doc. 74, App. W at 30–32). Correspondence with appellate counsel, dated March 15, 2011, reflects that she advised Defendant not to send further letters or paperwork to the Eleventh Circuit both because such paperwork would not be considered since Defendant had appointed counsel and because his "lucid communications" could "undermine any future claim of incompetency" (doc. 74, App. CC).

constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. Nyhuis, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998); McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." Lynn, 365 F.3d at 1232 n.14 (quoting Mills, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." Lynn, 365 F.3d at 1234; Bousley, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor

cannot be fairly attributable to [defendant's] own conduct." Lynn, 365 F.3d at 1235.  A meritorious claim of ineffective assistance of counsel can constitute cause.  *See* Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.  Massaro v. United States, 538 U.S. 500, 503 (2003); *see also* United States v. Franklin, 694 F.3d 1, 8 (11th Cir. 2012).  In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.  Strickland v. Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013).  Strickland's two-part test also applies to guilty pleas.  Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (citing Hill v. Lockhart, 474 U.S. 52, 58 (1985)).  A defendant will be required to show that but for counsel's errors, he would not have pleaded guilty and would have instead insisted on proceeding to trial.  *Id.* at 1384–85 (quoting Hill, 474 U.S. at 59).  In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.  Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688; *see also* Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).  Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); *see also* Chandler v. United States, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.  Strickland, 466 U.S. at 689.  To show

counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315.  When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, a defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694.  "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011) (quoting Strickland).  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010).  A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687).  Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." Id. at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987).  Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test. See Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." Chandler, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." United States v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance. A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

Finally, an evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); Rosin v. United States, 786 F.3d 873 (11th Cir. 2015); Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008). Not every claim of ineffective assistance of counsel warrants an evidentiary hearing. Gordon, 518 F.3d at 1301 (citing Vick v. United States, 730 F.2d 707, 708 (11th Cir. 1984)). To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief. *See* Hernandez v. United States, 778 F.3d 1230, 1234 (11th Cir. 2015). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See* Winthrop–Redin v. United States, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004). Even affidavits that amount to nothing more than

conclusory allegations do not warrant a hearing.  Lynn, 365 F.3d at 1239.  And disputes involving purely legal issues can be resolved by the court without a hearing.

### Grounds One and One-A: Ineffective Assistance of Trial Counsel

In Defendant's first ground for relief, he alleges that trial counsel was constitutionally ineffective in myriad ways.  He claims that counsel failed to advance a defense of mental incompetency, that counsel "coerced" him into changing his plea and signing a plea agreement that was not favorable to him, and that counsel failed to correct or object to errors contained in the plea agreement and factual basis.

Competency

The legal test for competency is whether a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and whether he has "a rational as well as factual understanding of the proceedings against him."  Dusky v. United States, 362 U.S. 402, 402 (1960); Lawrence v. Sec'y, Florida Dep't of Corrections, 700 F.3d 404 (11th Cir. 2012).  If a question arises with respect to a defendant's competency during the course of the proceedings against him, he is constitutionally entitled to a hearing.  Pate v. Robinson, 383 U.S. 375, 377 (1966).  The defendant in Robinson, for instance, had a long history of irrational behavior dating back to his childhood, his behavior at the time of the offense conduct was not rational, and his attorney repeatedly brought up the issue of competency.  Thus, despite the fact that defendant Robinson displayed mental alertness and understanding in his colloquies with the trial judge, this did not justify ignoring the uncontradicted evidence of Defendant's history of pronounced irrational behavior.  Id. at 385–86.  Similarly, in Drope v. Missouri, 420 U.S. 162 (1975), the Court held that further inquiry was warranted where the record reflected that on the eve of trial Defendant tried to choke his wife, whose favorable testimony was critical to his case; Defendant shot himself on the morning of the second day of trial to avoid trial; and Defendant's attorney expressed concern about his client's competency, having advised the court that his client was not of sound mind and should have a psychiatric examination before proceeding to trial.  420 U.S. at 179–181.

The Eleventh Circuit has held that a trial court is required to conduct, *sua sponte*, a competency hearing when the information known to the trial court at the time of the trial or plea hearing is sufficient to raise a bona fide doubt regarding the defendant's competence.  Tiller v.

Esposito, 911 F.2d 575, 576 (11th Cir. 1990) (citing Pate, 383 U.S. at 385). In determining whether there was a procedural due process violation, the focus is on the information known to the trial court at the time. Tiller, 911 F.2d at 576. In Tiller, the trial court had before it two psychiatric evaluations stating that defendant was suffering from delusions and/or hallucinations relating to his illegal conduct; during the plea colloquy defendant stated he wanted to know whether he would receive psychiatric treatment if he pleaded guilty; and on the date following sentencing the trial judge sent a letter to the state department of corrections indicating it was concerned with defendant's mental competence at the time of his guilty plea and sentencing. Id. In order to be entitled to a hearing on a substantive competency claim, a defendant must present "clear and convincing evidence that creates a real, substantial and legitimate doubt as to his competence." Lawrence, 700 F.3d at 81 (quotations and citations omitted).

Despite the district court's thorough colloquy, as set forth above, Defendant now claims that he was incompetent at the time of his guilty plea and sentencing, and that his alleged lack of competence was also a viable defense to the charges against him. Counsel was purportedly constitutionally ineffective for failing to bring these issues to the court's attention and to pursue the issue of incompetency as a defense. According to Defendant, his purported incompetence was the result of his taking psychotropic and/or neuroleptic medications that "rendered him incapable of acknowledging or admitting to anything asked or presented at any time because of incompetence." (doc. 86 at 4, 6).

Defendant does not identify any specific communications with counsel that should have alerted a reasonable attorney that investigation of Defendant's actual legal competency was warranted. Rather, he claims that indicia of incompetency exist in the record (doc. 86 at 9 n.12). Defendant's record citations, however, are not persuasive.[6] He refers, for instance, to paragraphs 56–59 of the PSR, which describe his mental and emotional health. The PSR reflects that Defendant was diagnosed with major depression, single episode, after he intentionally overdosed on pain medication in September of 2008 purportedly due to financial problems and continued chronic pain. Following this event, he completed inpatient treatment, and medical records indicate that Defendant

---

[6] The undersigned has reviewed the entire record, and not just the portions identified by Defendant.

had been stabilized using the medication Celexa.  Furthermore, despite the gravity of his legal situation, Defendant had no suicidal ideation while at the jail, where he continued to receive Celexa treatment (doc. 47, PSR ¶¶ 56–58).[7]  The PSR also reflects Defendant's purported addiction to pain medication, but notes that he had not received any prescription pain medication while confined at the Santa Rosa County Jail (*id.*, PSR ¶ 59).  Many defendants who come before the court suffer from depression, oftentimes as a result of the circumstances in which they find themselves.  None of the information in the PSR suggested that Defendant was legally incompetent, either at the time of the offense conduct or at the time Defendant entered his plea.

Defendant also cites to pages seven through twelve of the plea proceeding, which took place on June 17, 2009 (doc. 54).  The record reflects that Defendant admitted to the court that he had been diagnosed with severe depression and Baker Acted in September of 2008, approximately six months before the offense conduct in this case (*id.* at 7–9).  At the end of a two-week period of commitment, Defendant was released to outpatient status where he continued treatment (*id.* at 10).  Defendant reported that he was taking medication as part of the intensive outpatient treatment, during which he went to therapy every day for a month, but that he had completed that program (*id.* at 11).  Defendant also stated that after he completed the program he "was seeing" a psychiatrist and a therapist.  He further explained that he was taking Dilantin (an anti-seizure mediation), blood pressure pills, and Celexa (an anti-depressant).  He said that the jail was not giving him the Trazodone (*id.* at 11–12).  Defendant reported that he felt nervous, but "okay," when the court asked him how he was feeling mentally.  As noted above, despite this nervousness, Defendant denied having any difficulty following or understanding the court's questions (*id.* at 12).  This segment of the transcript paints a picture of an individual who experienced an episode of acute crisis, was stabilized, and whose situation was under control.  It suggests neither "continuing incompetence," nor incompetence at either the time of the offense conduct or the plea proceeding.  There was

---

[7] Defendant asserts in his reply that it cannot be said whether he had suicidal ideation as "ideational episodes of suicidality can occur though not vocalized or actualized" (doc. 86 at 12).  Neither the court, nor counsel, nor the probation officer is charged with clairvoyance, and to the extent Defendant claims he continued to experience suicidal ideation that was reported to or observed by no one, the court finds his assertion to be conclusory and self serving.

nothing in this record that would have put counsel or the court on notice that further inquiry into Defendant's legal competency was necessary.

Defendant also points to his testimony during the sentencing proceeding as evidence of his purported incompetence (doc. 55 at 4–9). During this testimony, Defendant stated that he was accepting full responsibility for what occurred (*id*. at 5). He indicated that as a result of the accident involving his foot, he had taken a wide variety of very powerful medications at different times including Neurontin or Triptorelin, Zanaflex, methadone, OxyContin, Lortab, Klonopin, and Protonix (*id*. at 6). Defendant also stated that he had an electronic device implanted in his body to assist in pain control, but that this device, like the medications, was not wholly effective (*id*. at 6–7). Defendant stated in response to counsel's questioning that he understood that taking the medication was not an excuse for what he had done, and that he was responsible for what he did, although he indicated that the medication had an impact on his judgment and his ability to control impulses (*id*. at 7–8). Even taken in conjunction with the rest of the record, Defendant's suggestion that the medication had an impact on his ability to control impulses does not suggest that inquiry into the issue of competency was warranted. Descriptions of the offense conduct in this case reveal that Defendant's behavior was not the result of a single, split-second impulsive act, but rather a series of calculated decisions made over a period of two hours (*see* doc. 30; doc. 47, PSR ¶¶ 13–17). Defendant engaged in an online chat with the purportedly underage victim for almost two hours. During this time he viewed the victim's online profile, which described "Caleb" as an unhappy fourteen-year-old boy in foster care, and Defendant took a screen shot of the profile. Defendant used google.com to search for directions to an arranged meeting spot, and then he drove thirty minutes in the wee hours of the morning with the intent of engaging in an illicit sexual liaison with an individual he believed to be a fourteen-year-old boy with no prior sexual experience. At the time Defendant was apprehended, he had lubricating jelly and condoms in his pocket. Although not directly part of the offense conduct, it was also noted that Defendant's computer was equipped with a software program that cleaned traces of online activities, such as internet history, and cleaned the registry. Another program on the computer encrypted data, making it impossible to recover any information that a user chose to encrypt, and performed "space wiping" that would permanently erase any deleted items that would normally be retrieved through forensic analysis (PSR ¶ 18). The

presence of such programs does not suggest an incompetent individual acting with disregard for the potential consequences of his actions.

In sum, Defendant's after-the-fact assertion that he was legally incompetent from the time of the offense conduct through sentencing is sufficient neither to establish legal incompetence, nor to establish that counsel was constitutionally ineffective.  The mere fact that Defendant was taking psychotropic medication is not dispositive of the question of competence.  *See, e.g.,* Fallada v. Dugger, 819 F.2d 1564, 1569 (11th Cir. 1987) (the mere fact that a defendant is being treated with anti-psychotic drugs does not per se render him incompetent to stand trial) (citing cases)[8];  Manual v. United States, Nos. CV609-045, CR607-013, 2010 WL 1904337 (S.D. Ga., Apr. 21, 2010) (counsel was not constitutionally ineffective for failing to request a competency hearing for a client who was taking anti-depressant medication).  Although some medications could have an impact on an individual's competency, the question is whether the medications had an impact on this Defendant in this case, and whether counsel was placed on notice of this or whether a reasonable attorney would have or should have discerned some sort of impairment.  The record does not contain an affidavit from counsel regarding his observations of his client's out-of-court conduct.  And other than the portions of the record cited above, Defendant has offered nothing that would have suggested to counsel or the court that Defendant's legal competence was at issue.  Counsel cannot be deemed constitutionally ineffective for failing to pursue an investigation of the issue of Defendant's competence under the circumstances in this case.

Lastly, although not dispositive of Defendant's claim, the undersigned notes that Defendant's appellate attorney's review of the record bears out this conclusion.  Defendant requested that appellate counsel, Assistant Federal Public Defender ("AFPD") Spivey, pursue the issue of his competence as a ground for relief on appeal, but after review of the file, counsel concluded that there was nothing in the record that would have supported a claim that he was incompetent (*see* doc. 80 at 21–22, counsel's letter dated March 28, 2011).[9]  Furthermore, as noted above (*see* footnote 5,

---

[8] Of course, some individuals may require psychotropic medication in order to be competent.

[9] The undersigned notes that in her letter, AFPD Spivey references an affidavit that Defendant submitted to accompany his appeal.  From the letter, the court gleans that Defendant set forth allegations about conversations with counsel, including off-record comments to counsel about the judge, in an effort to buttress his claim that he was

*supra*), in an earlier letter dated March 15, 2011, appellate counsel advised Defendant that he should not send further letters or pleadings to the appellate court because, in addition to not being considered, Defendant could "undermine any future claim of incompetency [Defendant] might make with such lucid communication" (*id.* at 55).

In conclusion, Defendant is not entitled to relief on his claim that trial counsel was constitutionally ineffective for his failure to pursue the issue of Defendant's competence.

<u>Ineffective Assistance with Respect to Defendant's Plea</u>

Defendant asserts that trial counsel's performance was constitutionally deficient with respect to Defendant's plea.  Defendant essentially asserts that counsel "coerced" him into entering into a plea that was both unfavorable to him and factually inaccurate, and that counsel failed to correct the inaccuracies upon Defendant's repeated requests.  Defendant also contends that as a result of counsel's actions, he was coerced into changing his not guilty plea to a plea of guilty for "crimes [he] did not commit" (doc. 73 at 4–5).[10]

An allegation of a coerced plea, supported by a factual allegation, can support a § 2255 motion.  *See* <u>Fontaine v. United States</u>, 411 U.S. 213, 214–15 (1973); <u>United States v. Lampazianie</u>, 251 F.3d 519, 524 (5th Cir. 2001).  However, a defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceedings.  <u>Blackledge v. Allison</u>, 431 U.S. 63, 73–74 (1977); <u>Winthrop-Redin</u>, 767 F.3d at 1210 (citing <u>Blackledge</u>).  This is because solemn declarations made under oath in open court carry a strong presumption of verity.  <u>Blackledge</u>, 431 U.S. at 73–74; <u>Connolly v. United States</u>, 568 F. App'x 770, 771 (11th Cir. 2014) (citing <u>Blackledge</u>); <u>Garces v. U.S. Att'y Gen.</u>, 611 F.3d 1337, 1349 (11th Cir. 2010) (citing <u>Blackledge</u>).  Such declarations are

---

incompetent (doc. 80 at 21–22).

[10] Defendant's insistence that he "did not commit" the crime with which he is charged is perplexing.  His suggestion that he went to Florida to obtain Lortab and Oxycontin (doc. 74, App. R, att. C at 1) appears spurious in light of the on-line chat with "Caleb" that preceded his 2:00 a.m. trip.  The fact that Defendant was unable to follow through on his intent to engage in sexual relations with a fourteen-year-old boy because the boy did not exist does not mean that no crime was committed.  Defendant has taken no responsibility for his offense conduct in his post-conviction pleadings.  The court is left to surmise that he suggests that his use of pschyotropic drugs somehow "excused" his conduct.  In any event, Defendant's persistent  protestations of innocence, despite the evidence against him, diminishes his credibility.

presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise; the subsequent presentation of conclusory and contradictory allegations does not suffice. Blackledge, 431 U.S. at 73–74; Winthrop-Redin, 767 F.3d at 1216.  In fact, such allegations are subject to summary dismissal.  *Id.* (citing Blackledge, 431 U.S. at 74).  A defendant "bears a heavy burden to show his statements [under oath] were false."  United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988); United States v. Green, 275 F. App'x 941 (11th Cir. 2008); United States v. Cardenas, 230 F. App'x. 933 (11th Cir. 2007).  "[I]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely."  United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (quoting United States v. Barrett, 514 F.2d 1241, 1243 (5th Cir. 1975)).

Defendant has submitted an affidavit titled "Affidavit of Davis Allen Girard: Plea Documents, Plea Proceedings, and Sentencing Proceedings" (doc. 74, App. R), in which he details his version of the historical and factual background of the case as well as circumstances surrounding the signing of the plea, the rearraignment, and the sentencing proceedings.  Defendant states that counsel came to the Santa Rosa County Jail and presented him with the plea documents on June 10, 2009, one week before the actual rearraignment took place.  During this meeting, after Defendant reviewed the documents, he told counsel that the documents "contained inaccurate and false information to crimes that [he] did not commit."  Nonetheless, contrary to his sworn averments before the district court at the plea proceeding, Defendant states that counsel coerced him into signing the plea documents by telling him, among other things, that if he did not sign the documents he would be forced to go to trial and would receive a longer sentence.  With respect to the plea proceeding, Defendant goes on to state that counsel "coached" him on how to answer the court's questions and how to make sure that his answers "fit" the charges.  Defendant states that he asked whether counsel wanted him to lie, and counsel told him no, but to answer "yes" where possible and in all other cases to keep his answers as short as possible.

In sum, Defendant would have this court believe that he was simultaneously incompetent enough that counsel could overbear his will and convince him to essentially lie to the court,[11] but competent enough to follow counsel's specific instructions as to how to answer the questions posed by the court.  The record contains no suggestion of coercion.  The colloquy establishes that Defendant decided to plead guilty after thorough consultation with counsel.  Defendant has not presented "compelling evidence" showing that his statements at the plea colloquy should be disregarded, or that his plea was coerced.  *See* Blackledge, 431 U.S. at 73–74.

Defendant also complains that the plea agreement had no favorable terms on his behalf, but rather that it only benefitted the Government.  This court is well aware that the practice of the United States Attorney's Office in the Northern District of Florida is not to engage in "plea negotiations."  In accordance with this practice, the Government will neither agree to a specific sentence nor will it typically dismiss any meritorious charges.  Rather, a defendant will be afforded the opportunity to plead guilty to the indictment, or not.  After a guilty plea, assuming the defendant does not deny relevant conduct, he or she will typically be entitled to a two or three-level downward adjustment for "acceptance of responsibility" pursuant to § 3E1.1(b).  Defendant did receive the benefit of this adjustment here (doc. 47, PSR ¶ 33).  In light of the strength of the Government's case against him, Defendant had little to gain and much more to lose by testing the Government's case at trial.  Without the acceptance of responsibility adjustment, Defendant's total offense level would have been significantly higher.  Furthermore, had Defendant been found guilty after testifying at trial, he would have likely faced an additional two-level upward adjustment for obstruction of justice.  The district in which the offense conduct occurred, coupled with the nature of the conduct, resulted in

---

[11] Defendant stated during the plea colloquy, for instance, that:  he signed the documents voluntarily without any threats or pressure; he was pleading guilty because he was guilty of the charges; no one had promised him a particular sentence; he had read the factual summary word for word, and he did what the Government said he had done therein; and he was satisfied with counsel's representation of him (doc. 54 at 19, 21, 22, 25, 27).  He also stated that counsel answered his questions during his consultations with him during the proceeding, contrary to what he now asserts (*see* doc. 54 at 31–32; doc. 74, App. R, Att. B at 1–2).

the plea agreement Defendant deemed to be "unfavorable." Counsel was not constitutionally ineffective in failing to secure a more beneficial plea, as one was simply not available.[12]

<u>Counsel's Failure to Investigate</u>

Defendant contends that trial counsel's performance was constitutionally deficient because he failed to conduct an adequate investigation into Defendant's background, the case, and the law.

Defendant first contends that trial counsel failed to conduct any investigation into his competency. Absent any indication that such an investigation was necessary, counsel was not constitutionally ineffective for his failure to pursue it. Furthermore, as discussed thoroughly above, despite Defendant's repetitive arguments to the contrary, the undersigned is not convinced that any such investigation would have provided a defense to the charges in this case. As such, there was no prejudice.

Defendant next contends that counsel's lack of investigation and knowledge of him allowed misrepresentations of fact to be argued by the Government at sentencing as a predicate for both the upward departure and the variance. The only misrepresentation to which Defendant refers appears to be the date of his workplace accident, which occurred in September of 1999, rather than September of 2001 (*see* doc. 74, App. T; doc. 55 at 5, 9; *see also* doc. 47, PSR ¶ 53, *but see* PSR ¶ 62). Again, Defendant can show neither deficient performance nor prejudice. Although there does appear to be an inconsistency within the PSR, counsel cannot be faulted for relying on the accuracy of information reportedly provided by his client and confirmed by a family member (*see* doc. 47, PSR ¶ 53). As such, counsel's performance was not constitutionally deficient in this respect.

In addition, it does not appear that Defendant can show prejudice. In making its argument to the court, the Government noted that to the extent Defendant attempted to blame his behavior on his accident, he could not because his prior arrest for child exploitation offenses happened in January of 2001, which predated his accident (doc. 55 at 11). The Government's argument for an upward departure and variance included other facets, however, including the fact that Defendant chose a

---

[12] Defendant claims in one of his supporting affidavits that counsel never advised him that he had the right to object to the contents of the PSR (doc. 74, App. R at 7; *see also* doc. 74-2 at 37 ¶ 70). However, the court told Defendant at the rearraignment proceeding about this right (doc. 54 at 30). To the extent this assertion is part of his ineffective assistance of counsel claim, he is not entitled to relief thereon.

vulnerable victim, as he had in the past, that it was Defendant who initiated the contact and the sexual conversation, and that Defendant took affirmative action toward completion of sexual contact within two hours of meeting the victim online by traveling to an appointed meeting site with condoms and lubrication (*id*. at 12–16).

Although the court noted several factors that played a part in the sentence, it did not reference the Government's argument that Defendant had a "penchant for" children even before the accident.  In light of the comments by the district court, it does not appear likely that an argument attempting to attribute the offense conduct in both cases to Defendant's accident would have affected his sentence.  The court noted that given Defendant's prior conduct, it appeared that he selected children who were "vulnerable, lonely and in need of affection."   It opined that the consequences stemming from Defendant's arrest in 2001 should have been, but clearly were not, enough of a message to him that this type of conduct is not tolerated in our society, because the conduct in the instant case was "more aggravated."   The court also stated that it had a hard time believing that Defendant had not continued to possess child pornography on his computer in light of the data destruction program thereon[13] (*id*. at 19–21).  The primary factors the court identified as the basis for the variance were "the need for deterrence for you, Mr. Girard, as well as, most notably, the need to protect society from crimes of this nature" (*id*. at 21).  Defendant is not entitled to relief on this issue, having shown neither deficient performance nor prejudice stemming from his identification of the wrong date of his workplace accident.

Defendant also contends that counsel was constitutionally ineffective because he failed to correct or object to "numerous and significant errors" contained in the PSR.  Besides the error in paragraph 53 concerning the date of Defendant's workplace accident, Defendant has failed to identify any other alleged errors or how they impacted his sentence.  As such, he can show neither deficient performance or prejudice.

---

[13] Defendant states in an affidavit dated February 22, 2011, that trial counsel failed to investigate facts to find out why the program was on his computer (doc. 74, att. R, Att. C at 2 (doc. 74-2 at 45).  Defendant neither suggests what counsel would have learned from such an investigation nor proffers any innocent explanation for the presence of such a program.

Defendant asserts that trial counsel's failure to investigate his physical and mental condition resulted in him being convicted, sentenced, and incarcerated while incompetent.  As noted above, Defendant may not avoid responsibility for his conduct due to unsupported allegations of "incompetency."  The offense conduct was not the result of a momentary impulse with no time for thought or consideration.  Defendant's purported mental illness or incompetence at the time of the offense conduct did not prevent him from taking all the steps necessary to consummate the planned illicit encounter.  Defendant chatted with the purported child for nearly two hours before driving thirty minutes to meet him armed with condoms and lubrication.  Defendant has not established constitutionally deficient performance or prejudice due to counsel's failure to investigate Defendant's alleged incompetency.

### Ground Two:  Denial of Procedural and Substantive Due Process Rights

Defendant claims that his procedural and substantive due process rights were violated because the district court did not hold a competency hearing.  This claim, which could have been raised on appeal, is procedurally barred.  Lynn, 365 F. 3d at 1234–35.  It is also without merit. Defendant's complaint that the court never made an on-the-record determination that Defendant was competent to enter a guilty plea does not demonstrate constitutional error.  This is because there was nothing about Defendant's behavior or demeanor that suggested such a finding was necessary. Based on the trial court's knowledge at the time, as discussed in the previous section, there was no constitutional obligation for the court to conduct to a competency hearing.  Defendant is not entitled to relief.

### Ground Three:  Ineffective Assistance of Appellate Counsel

Defendant contends that appellate counsel was constitutionally ineffective because she raised two "frivolous, non-meritorious, non-constitutional issues" on direct appeal, while ignoring issues that Defendant had requested she raise.  Defendant's claim appears to stem in large part from his having taken offense at the fact that AFPD Spivey solicited his input regarding potential appellate issues but then rejected the issues he raised.  Defendant claims that he wrote to his appellate attorney no fewer than twenty-four times, raising the issue of competency on nine occasions, and ineffective assistance of trial counsel on five occasions (doc. 74 at 34).  He complains that counsel's decision

not to raise these issues that were "dead-bang winners," in favor of ultimately unsuccessful claims, was constitutionally deficient.

Due process of law requires that a defendant receive effective assistance of appellate counsel on his direct appeal.  Evitts v. Lucey, 469 U.S. 387, 396 (1985).  However, the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue on appeal if counsel, as a matter of professional judgment, decides not to do so.  Smith v. Robbins, 528 U.S. 259, 287–88 (2000); Knowles v. Mirzayance, 556 U.S. 111, 126–127 (2009); Jones v. Barnes, 463 U.S. 745, 751–52 (1983); Heath v. Jones, 941 F.2d 1126, 1130–31 (11th Cir. 1991).   It is possible to bring a Strickland claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate in such a situation that counsel's performance was constitutionally ineffective.  Smith, 528 U.S. at 288 (citing Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")); see also Payne v. United States, 566 F.3d 1276, 1277 (11th Cir. 2009) (citing Smith).  "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  Barnes, 463 U.S. at 751–52.  In fact, this is the "hallmark of effective appellate advocacy."  Smith v. Murray, 477 U.S. 527, 536 (1986).  The mere fact that one of the non-appealed issues might have been successful does not preclude a finding that the counsel's performance, which must be judged in its entirety, was effective.  Id.; Heath, 941 F.2d at 1131 (counsel's appellate advocacy must be judged in its entirety); Reutter v. Secretary for Dept. of Corrections, 232 F. App'x 914, 917 (11th Cir. 2007) (citing Heath).

To prevail on a claim for ineffective assistance of appellate counsel, a defendant must show that (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal.  Shere v. Sec'y Fla. Dep't of Corr., 537 F.3d 1304, 1310 (11th Cir. 2008); see Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) (holding that claims for ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland, 466 U.S. at 687.  Counsel is clearly not ineffective for failing to raise a meritless issue on appeal.  Shere, 537 F.3d at 1311; Ladd v. Jones, 864 F.2d 108, 110 (11th

Cir. 1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them.").

In this case, Defendant has not met his burden of showing that appellate counsel's performance was constitutionally deficient. As noted by counsel in her March 28, 2011, letter to Defendant, the record did not support a viable claim of incompetency, and Defendant's ineffective assistance of trial counsel claim(s) would typically be more properly brought in a section 2255 proceeding (*see* doc. 80 at 21–22).[14] Defendant is not entitled to relief on this claim.

Conclusion

For all of the foregoing reasons, the court finds that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit. Nor has he shown that an evidentiary hearing is warranted. Therefore, Defendant's motion should be denied in its entirety.

**Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

---

[14] Counsel also noted in her letter that she realized that she was "somewhat repeating herself from prior letters" (doc. 80 at 22).

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.      The motion to vacate, set aside, or correct sentence (doc. 73) be **DENIED**.

2.      A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 29th day of September 2015.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**